UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Prudence Louise Schwarz,
        Claimant

        v.                                Case No. 16-cv-163-SM
                                          Opinion No. 2017 DNH 167
Nancy A. Berryhill, Acting Commissioner,
Social Security Administration,
        Defendant


**O R D E R**

        Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant,

Prudence Schwarz, moves to reverse or vacate the Acting

Commissioner's decision denying her applications for Disability

Insurance Benefits under Title II of the Social Security Act and

Supplemental Security Income Benefits under Title XVI.  See 42

U.S.C. §§ 423, 1381-1383c (collectively, the "Act").  The Acting

Commissioner objects and moves for an order affirming her

decision.


        For the reasons discussed below, claimant's motion is

denied, and the Acting Commissioner's motion is granted.

**Factual Background**

I.  <u>Procedural History</u>.

In May of 2013, claimant filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that she was disabled and had been unable to work since October 20, 2011. Claimant was 31 years old at the time and had acquired sufficient quarters of coverage to remain insured through September 30, 2013. Those applications were denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In December of 2014, claimant, her attorney, and an impartial vocational expert appeared by video conferencing before an ALJ, who considered claimant's applications de novo. Six weeks later, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision. Claimant then requested review by the Appeals Council. That request was denied. Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Acting Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion to Reverse Decision of the
Commissioner" (document no. 6). In response, the Acting
Commissioner filed a "Motion for an Order Affirming the Decision
of the Commissioner" (document no. 9). Those motions are
pending.

II. <u>Stipulated Facts</u>.

Pursuant to this court's Local Rule 9.1, the parties have
submitted a joint statement of stipulated facts which, because
it is part of the court's record (document no. 8), need not be
recounted in this opinion. Those facts relevant to the
disposition of this matter are discussed as appropriate.

**Standard of Review**

I. "<u>Substantial Evidence</u>" and <u>Deferential Review</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to
enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing." Factual findings and credibility
determinations made by the Commissioner are conclusive if
supported by substantial evidence. <u>See</u> 42 U.S.C. §§ 405(g),
1383(c)(3). <u>See also</u> <u>Irlanda Ortiz v. Secretary of Health &</u>
<u>Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Importantly, it is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).  See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

II.  The Parties' Respective Burdens.

An individual seeking SSI and/or DIB benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  See also 42 U.S.C. § 1382c(a)(3).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairment prevents her from performing her

former type of work.  See Gray v. Heckler, 760 F.2d 369, 371
(1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11
(D. Mass. 1982).  If the claimant demonstrates an inability to
perform her previous work, the burden shifts to the Commissioner
to show that there are other jobs in the national economy that
she can perform, in light of her age, education, and prior work
experience.  See Vazquez v. Secretary of Health & Human
Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§
404.1512(f) and 416.912(f).


      In assessing a disability claim, the Commissioner considers
both objective and subjective factors, including: (1) objective
medical facts; (2) the claimant's subjective claims of pain and
disability, as supported by the testimony of the claimant or
other witnesses; and (3) the claimant's educational background,
age, and work experience.  See, e.g., Avery v. Secretary of
Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986);
Goodermote v. Secretary of Health & Human Services, 690 F.2d 5,
6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if
her:

           physical or mental impairment or impairments are of
      such severity that [she] is not only unable to do
      [her] previous work but cannot, considering [her] age,
      education, and work experience, engage in any other
      kind of substantial gainful work which exists in the
      national economy, regardless of whether such work

exists in the immediate area in which [she] lives, or
whether a specific job vacancy exists for [her], or
whether [she] would be hired if [she] applied for
work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).


With those principles in mind, the court reviews claimant's
motion to reverse and the Acting Commissioner's motion to affirm
her decision.


## Background - The ALJ's Findings

In concluding that claimant was not disabled within the
meaning of the Act, the ALJ properly employed the mandatory
five-step sequential evaluation process described in 20 C.F.R.
§§ 404.1520 and 416.920.  See generally Barnhart v. Thomas, 540
U.S. 20, 24 (2003).  Accordingly, he first determined that
claimant had not been engaged in substantial gainful employment
since her alleged onset of disability: October 20, 2011.  Admin.
Rec. at 18.  Next, he concluded that claimant suffers from the
following severe impairments: "a right should impingement, s/p
multiple surgeries; bilateral carpal tunnel syndrome, s/p
surgery; degenerative disc disease (cervical and lumbar spines)
and obesity."  Id.  But, the ALJ determined that claimant's
impairments, whether considered alone or in combination, did not
meet or medically equal one of the impairments listed in Part

404, Subpart P, Appendix 1 of the regulations.  Admin. Rec. at
23.

Next, the ALJ concluded that claimant retained the residual
functional capacity ("RFC") to perform the exertional demands of
"sedentary" work, subject to the following limitations: "she is
able to perform overhead reaching with the right upper extremity
occasionally (up to a maximum of 1/3 of the workday); to perform
all postural activities occasionally; and to perform grasping
and handling with the bilateral upper extremities frequently (up
to a maximum of 2/3 of the workday)."  Admin. Rec. at 24.  In
light of those restrictions, the ALJ concluded that claimant was
not capable of performing any past relevant work.  Id. at 28.
See also Id. at 55-56 (vocational expert's testimony about
claimant's work history).

At the final step of the analysis, the ALJ considered
whether there are any jobs in the national economy that claimant
might perform.  Relying upon the testimony of the vocational
expert, the ALJ concluded that, notwithstanding claimant's
exertional and non-exertional limitations, "the claimant is
capable of making a successful adjustment to other work that
exists in significant numbers in the national economy."  Id. at
29-30.  Consequently, the ALJ concluded that claimant was not

"disabled," as that term is defined in the Act, through the date of his decision.

## Discussion

Claimant challenges the ALJ's decision on two grounds, asserting that he erred: (1) by failing to give substantial weight to the opinion of a treating physician, who opined that she could only "rarely" reach in any direction (including overhead); and (2) by concluding, without the benefit of a supporting medical opinion, that claimant could perform activities that require grasping and handling for up to two-thirds of a workday.

I.    <u>Treating Source Opinions</u>.

In discussing the weight that will be ascribed to the opinions of "treating sources," the pertinent regulations provide:

> Generally, we give more weight to opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) . . .  When we do not give the treating source's opinion controlling weight, we apply the factors listed [in this section] in determining the weight to give the opinion.  We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.

20 C.F.R. § 404.1527(c)(2).  <u>See also</u> Social Security Ruling,

<u>Policy Interpretation Ruling Titles II and XVI: Giving</u>

<u>Controlling Weight to Treating Source Medical Opinions</u>, SSR 96-

2p, 1996 WL 374188 (July 2, 1996).  Importantly, however, there

is no per se rule requiring the ALJ to give greater weight to

the opinion of a treating source.  To be entitled to controlling

weight, a treating source's opinions must be "well-supported by

medically acceptable clinical and laboratory diagnostic

techniques and [cannot be] inconsistent with the other

substantial evidence in [the] case record."  20 C.F.R. §

404.1527(c)(2).


     Here, claimant asserts that the ALJ should have accepted

the opinion of her primary care physician, Kenton Powell, M.D.,

who, in completing a Medical Source Statement, checked a box

that indicates claimant has the ability to "rarely" reach in any

direction (including overhead).  Medical Source Statement (dated

November 6, 2014), Admin. Rec. at 746.  According to claimant,

the ALJ improperly discounted that opinion and gave too much

weight to the opinions of a non-examining physician and a

consultative examining physician.

In September of 2013, Peter Loeser, M.D., conducted a consultative examination of claimant. The only "positive findings" he reported were: "Moderate pain with movement of right shoulder, but intact range of motion. Mild pain on palpation of the right glenohumeral joint without crepitus, effusion, or atrophy of the supporting musculature." Admin. Rec. at 424. In his "assessment" of claimant's physical condition, Dr. Loeser concluded:

> Bilateral shoulder pain: There are subjective findings related to the patient's right shoulder, but otherwise there were no significant finding[s] on physical examination. There is no available supporting documentation for these symptoms; however there are several office visits for other issues (including other pain related musculoskeletal symptoms) without mention of shoulder pain or related findings. Though the patient states these symptoms are having a significant impact on her overall ability to function, there is insufficient evidence to support this conclusion.

Id. Subsequently, on November 17, 2013, a non-examining state agency physician, Burton Nault, M.D., reviewed claimant's then-available medical records and concluded that she retained the RFC to perform light work, Id. at 78, with no more than "occasional overhead reaching with the right shoulder," id. See also Id. at 76 (noting that claimant should "avoid more than occ[asional] overhead reaching with right shoulder").

The opinions of both Dr. Loeser and Dr. Nault are
consistent with the medical evidence as well as claimant's
reported daily activity.  For example, in September of 2013,
claimant underwent a consultative psychological examination by
Anna Hutton, Psy.D.  At that time, she reported that a "typical
day" consisted of the following:

> Ms. Schwarz wakes up between 5 and 6. She gets the
> children ready for school.  She drives one of the
> children to his school.  She then does grocery
> shopping and does laundry and cleans the house.  She
> picks up food for dinner and picks up one son from
> school.  She gets him started on his homework and goes
> to the bus stop to pick up the other children.  She
> gets dinner ready for the family then gets her
> children in the showers and ready for bed.  She has
> story time with the children and gets the children in
> bed by 7:30.  Her husband goes to bed around 8.  She
> then has a bit of "me time" to reply to emails.  She
> spends time completing paperwork for her children's
> school, getting things prepared for the next morning
> and she goes to bed around 11.  There are typically at
> least 2 doctor's appointments a week for herself or
> one of her family members.

Admin. Rec. at 429.  And, based upon her examination of
claimant, Dr. Hutton concluded that the "degree of assistance"
claimant required with the following activities of daily living
was "appropriate" - household activities, shopping, cooking,
transportation, paying bills, maintaining her residence, and
daily grooming and hygiene.  Id.  See also Id. at 199 (in her
statement about her activities of daily living, dated July 6,
2013, claimant stated that despite the fact that it "hurts a lot

to try and play sports," she "plays basketball and football with the kids" about "once a week or so").

Nevertheless, says claimant, subsequent medical records which were not available to Dr. Nault and Dr. Loeser demonstrate that she suffers from more substantial physical limitations. Consequently, she says the ALJ erred in giving so much weight to the opinions of those physicians and should, instead, have deferred to those of her treating physician. The court is, however, constrained to disagree.

The medical evidence of record relating to the period between October of 2013 and November of 2014 (the most recent evidence submitted prior to claimant's hearing) is largely consistent with the opinions expressed by both Dr. Nault and Dr. Loeser. The pain and other symptoms of claimant's carpal tunnel syndrome (discussed more fully below) were almost entirely resolved by surgery. And, as the ALJ noted, her shoulder pain appears to have been largely intermittent and transitory - frequently brought on by either trauma or over-exertion:

> While the claimant is noted to experience some intermittent flare-ups of spinal pain (and shoulder pain) throughout the period under review, including subsequent to a reported motor vehicle accident in June of 2012 (as well as after a sledding incident in February of 2013; after lifting wood in September of

2013; and after riding an amusement ride in July of
2014), her temporary exacerbations are noted to
resolve within a period of less than 12 months.

Admin. Rec. at 25 (citations omitted). Indeed, during an annual

physical evaluation by Dr. Kenton in October of 2014, claimant

reported "no numbness, tingling, loss of sensation, weakness or

function of limbs," and no musculoskeletal weakness or pain, at

rest or with movement. Admin. Rec. at 753. And, Dr. Kenton

reported that claimant retained full range of motion in her neck

and she retained strength in both her "upper and lower

extremities" at "5/5." Id. at 756.


While there is certainly some evidence of mild spinal

stenosis and cervical radiculopathy, a consulting neurologist

examined claimant, reviewed and her diagnostic imaging, and

opined that "it is unlikely that the cervical pathology present

is causing all of her current symptoms, . . . . [and] it is most

probable that she is experiencing somatization on top of her

chronic neck pain." Consult Note of Vijay Thadani, M.D. (dated

July 31, 2014), Admin. Rec. at 772. He recommended conservative

treatment and opined that, "the best course of action at this

point is reassurance and validation of her experiences, as well

as physical therapy to regain function." Id. Although Dr.

Thadani recommended both "PT [physical therapy] and rehab to

regain function," id., there is no indication in the record that claimant sought or obtained any physical therapy or rehabilitative services.

Finally, it bears noting that the ALJ specifically acknowledged that he was aware that new medical evidence became part of the record after Dr. Nault and Dr. Loeser prepared their reports. See Admin. Rec. at 27. And, based upon that new evidence, the ALJ gave claimant "the benefit of the doubt and [found] that her reported ongoing pain symptoms credibly limit her to the performance of a range of sedentary exertion work with some postural and grasping/handling limitations." Id. That is to say, based upon the new medical evidence, the ALJ concluded that claimant's impairments imposed upon her slightly greater restrictions than the "light" work RFC to which Dr. Nault opined.

Given the record evidence, the court cannot conclude that the ALJ's conclusion about claimant's reaching ability, or his decision to rely upon the expert opinions of Dr. Nault and Dr. Loeser, is unsupported by substantial evidence.

II.  RFC and Grasping/Handling Limitations.

Next, claimant asserts that the ALJ erred in concluding
that she retains the RFC to "frequently" perform activities that
require grasping and/or handling of objects.  In support of that
argument, claimant notes that while Dr. Nault opined that
claimant's ability to handle objects was "unlimited," id. at 90,
her treating physician opined that she was limited to only
"occasional" handling of objects, id. at 746.  And, although the
ALJ gave "great weight" to the opinions of Dr. Nault, he
concluded that claimant did not have an "unlimited" ability to
handle objects.  Once again, crediting claimant's "reported
ongoing pain symptoms," the ALJ determined that she did, indeed,
have slightly greater limitations than those to which Dr. Nault
opined.

Claimant challenges those findings, saying the ALJ
impermissibly "chart[ed] a middle course" between Dr. Nault's
opinion (i.e., an "unlimited" ability to handle objects) and the
opinion of her treating physician, Dr. Powell (i.e., an ability
to handle object only "occasionally").  Claimant's memorandum at
18.  By doing so, says claimant, the ALJ arrived at an RFC that
was unsupported by a medical opinion.  And, "lacking a
supporting assessment from a medical expert, the ALJ should
either have recontacted the [claimant's] treating sources

concerning the limitations imposed by her impairments or ordered her to undergo [another] consultative examination by a medical professional." Id. at 20-21. According to claimant, "the ALJ's failure to do either was a significant legal error." Id.

But, the ALJ's determination of claimant's limitations is supported by substantial evidence in the record (including, for example, claimant's entirely positive response to carpal tunnel release surgery) and there was no need to seek a second consultative examination. See, e.g., Childers v. Colvin, No. 14-CV-270-JL, 2015 WL 4415129, at *2 (D.N.H. July 17, 2015) ("It is generally true that an ALJ is not qualified to interpret raw medical data in functional terms. But even assuming the ALJ committed such an error, it is harmless where, as here, the RFC finding is more favorable to a claimant than the medical record supports. Against this backdrop, the fact that the ALJ gave [claimant] the benefit of the doubt in concluding that her physical RFC was more limited than the physicians' assessment should not be used to discount the ALJ's determination.") (citations and internal punctuation omitted).

This is not a situation in which the ALJ proceeded in the absence of an RFC assessment by a medical expert, or relied upon a "single decisionmaker." Consequently, claimant's reliance

upon Levesque v. Colvin, 2014 WL 4531743, 2014 DNH 191 (D.N.H. Sept. 11, 2014) is misplaced. Instead, as was the case in Childers, the ALJ considered the additional record evidence, gave claimant the benefit of the doubt, credited (to some degree) her subjective complaints of pain, and concluded that her RFC was more limited than Dr. Nault believed. As it relates to claimant's ability to handle/grasp objects, the additional medical evidence reveals that claimant obtained substantial relief from right and left carpal tunnel surgeries, which were performed in August (right wrist) and September (left wrist) of 2014. See Admin. Rec. at 613, 625-28. See also Id. at 743 ("Patient has done well after surgery with no apparent complications."). And, by September of 2014, she was reported to have "strength 5/5 right and left upper and lower extremities" with "sensation to light touch in ext[remities] intact." Id. at 760. By October of 2014, she reported that, although she engaged in "no formal exercise" she was, nevertheless, "active" and had "returned to full daily activities." Id. at 742. Additionally, her extremity joints were normal, id. at 756; her neck had full range of motion, id. at 751, 756; she had 5/5 upper extremity strength with normal sensation, id. at 756; her musculoskeletal range of motion was normal, id. at 751; and she had no complaints except those

related to a transitory infection of her left wrist (following carpal tunnel surgery), id. at 743, 751.

The ALJ properly considered the medical evidence added to the record after Dr. Nault conducted his review and concluded that it demonstrated that claimant's ability to handle/grasp objects was slightly more limited than Dr. Nault had opined. Given the circumstances of this case, that was not error. There is substantial evidence to support the ALJ's conclusion that claimant retains the ability to engage in such activities "frequently" (that is, up to two-thirds of a work day).

Finally, as the Commissioner notes, even if the ALJ had accepted Dr. Kenton's opinion that claimant can handle objects only "occasionally," that would not have affected the outcome of the case. At claimant's hearing, the vocational expert testified that one of the sedentary jobs she could perform is that of a "telephone solicitor" (DOT number 299.357-014). That job requires only "occasional" handling of objects. See Dictionary of Occupational Titles, Telephone Solicitor, 1991 WL 672624 (1991). And, the vocational expert testified that there is a "significant number" of those jobs in the regional and national economy (i.e., 1,000 and 160,000, respectively). See generally, Dashnaw v. Astrue, No. 10-CV-456-SM, 2011 WL 5040708,

at *6 (D.N.H. Oct. 24, 2011) ("The vocational expert testified that more than 30,000 positions exist in the national economy for the three sedentary jobs identified by the ALJ.  That is a 'significant number' of jobs in the national economy") (citing Vining v. Secretary of Health & Human Services, 720 F. Supp. 2d 126, 137 (D.Me. 2010)).


## Conclusion

Judicial review of the ALJ's decision is both limited and deferential.  This court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether she is disabled under the Act. Consequently, the issue before the court is not whether it believes claimant is disabled.  Rather, the permissible inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Provided the ALJ's findings are properly supported by substantial evidence - as they are in this case - the court must sustain those findings even when there may also be substantial evidence supporting the contrary position.  Such is the nature of judicial review of disability benefit determinations.  See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's]

conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Having carefully reviewed the administrative record and the arguments advanced by both the Acting Commissioner and claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not "disabled," as that term is used in the Act, at any time prior to the date of the ALJ's decision (January 29, 2015). The ALJ's assessment of claimant's ability to reach, his discussion of the weight afforded to the opinions of claimant's treating physician, and his conclusions about claimant's ability to grasp and handle objects, are all well-reasoned and adequately supported by substantial documentary evidence.

For the foregoing reasons, as well as those set forth in the Acting Commissioner's legal memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 6) is denied, and the Acting Commissioner's motion to affirm her

decision (document no. 9) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

        **SO ORDERED.**

                              _____
                              Steven J. McAuliffe
                              United States District Judge

August 30, 2017

cc:  Peter K. Marsh, Esq.
     Terry L. Ollila, AUSA